IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CARL LEWIS,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CITY OF MONTGOMERY,<br><br>　　　　　Defendant. | ) Case No.: 2:06cv237-CSC<br>)<br>) **CITY OF MONTGOMERY'S BRIEF IN**<br>) **SUPPORT OF MOTION FOR SUMMARY**<br>) **JUDGMENT**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMES NOW, the city of Montgomery, by and through undersigned counsel, and in support of its Motion for Summary Judgment, says as follows:

## PROCEDURAL HISTORY

This case comes before this Court on the Complaint (Doc. No. 1) originally filed in this Court on March 14, 2006, a Motion for More Definite Statement (Doc. No. 4), and an Amended Complaint (Doc. No. 10), which was allowed, alleging a disparate treatment claim under Title VII of the Civil Rights Act of 1964 codified at 42 U.S.C. §2000e et. seq. based upon an alleged impermissible termination of employment based upon the plaintiff's race.  The defendant answered the Amended Complaint (Doc. No. 9) denying the disparate treatment allegation and asserting the affirmative defenses that 1) a legitimate, non-discriminatory reason existed for all employment decisions, and 2) that it would have taken the adverse employment action complained of despite any discrimination based upon a protected trait or characteristic.

# FACTS

Mr. Lewis, an African American, alleges that he was treated differently from white employees when he was terminated from his employment from the City of Montgomery; that another employee, namely Johnny Ray Smith, was a similarly situated employee who was treated differently. (Doc. No. 10).

Mr. Lewis was terminated from his employment with the city of Montgomery after a departmental hearing before the Director of Fleet Management and a second hearing before the Mayor's Executive Assistant for habitually coming in late without calling. More specifically, Mr. Lewis was discharged for receiving

> [1] numerous verbal counseling sessions by [his] division superintendent regarding the need to call in when running late, [2] a verbal reminder for being late from the department's timekeeper, and [3] six (6) documented reprimands for violation of the Departmental Operating Instruction Number 8 within a six month period, to wit: failure to call [his] supervisor or the operations center before [his] shift start time advising that [he] would be late for work on the following dates: October 5, 2004, October 15, 2004, January 7, 2005, January 14, 2005, January 31, 2005 and February 1, 2005.

(Exhibit A, page 5, Attachment to Notice of Disciplinary Hearing). Operating Instruction No. 8 states that "[w]hen employees are going to be late reporting to duty, they are to call the Control Center/Foreman PRIOR to their shift start time. Failure to do so WILL result in a Written Reprimand." (Exhibit A, page 6, Operating Instruction No. 8, *emphasis and capitalization in original*). The same rule states that "[i]f an individual receives five (5) reprimands in a one hundred eighty (180) day period, a recommendation WILL be made for dismissal from City employment." (Exhibit A, page 7, Operating Instruction No. 8, *emphasis and capitalization in original*).

Plaintiff's complaint asserts that the plaintiff was also charged with "taking time off of work without pay." (Doc. No. 10, item 11). This claim refers to the attachment to the Recommendation for Disciplinary Action, which says, among other things, that Mr. Lewis also "had made no effort to improve [his] tardiness and taking time off without leave," and it cites to Operating Instruction No. 6. (Exhibit A, page 5, Attachment to Notice of Disciplinary Hearing). Operating Instruction No. 6 and the reference to "time off without leave" is ancillary to the charge for failing to call in his tardiness, though. In essence, the period of time that Mr. Lewis was late on each of the days in question was time taken without leave because he failed to obtain prior approval as is required by Operating Instruction No. 6. (Exhibit A, page 8, Operating Instruction No. 6).

Operating Instruction No. 6 is a departmental policy dealing with the procedure for using leave time. It requires that "any employee not on the time clock should complete a leave request form." (Exhibit A, page 8-9, Operating Instruction No. 6). The rule states that vacation leave, compensatory leave, and scheduled sick leave must be requested at least 24 hours before the leave is to be effective. As for unscheduled or emergency leave, according to the policy, the employee must notify his foreman or the director or assistant director before his scheduled shift start time. The foreman, director, or assistant director, as the case may be, then, is responsible for submitting the leave form on behalf of the employee. (Exhibit A, page 9, Operating Instruction No. 6).

When read in context with the above-quoted charge, it is clear that Mr. Lewis was terminated for habitually reporting for work late without calling in advance of the appointed start time as required by both Operating Instruction Nos. 6 and 8; that his being late was a violation of Operating Instruction No. 6 merely because he did not make the appropriate leave request for the

time he missed as a result of his tardiness. (Exhibit A, page 5, Attachment to Notice of Disciplinary Hearing).  It is Operating Instruction No. 8 which dictates what punishment should be meted out based upon the frequency of the violation.  The rule states, in pertinent part:

> Personnel receiving three (3) reprimands in one or a combination of any of the above categories in a one hundred eighty (180) day period for any violations in paragraph eight (8) CAN expect to receive a three (3) day suspension without pay.  A person receiving four (4) reprimands in a one hundred eighty (180) day period WILL be suspended without pay for a period of five (5) days.  If an individual receives five (5) reprimands in a one hundred eighty (180) day period, a recommendation WILL be made for dismissal from City employment.

(Exhibit A, page 7, Operating Instruction No. 8, *emphasis and capitalization in original*).

Mr. Lewis received, according to the Complaint, "six (6) written reprimands at one time." (Doc. No. 10, item 11).  As his comparator, Plaintiff identifies Johnny Ray Smith, and avers that he received similar reprimands and was only suspended for three (3) days. (Doc. No. 10, item 11).  The city concedes that Mr. Lewis was given the six (6) reprimands at one time and adds that Johnny Ray Smith, a white employee in the same department was given multiple reprimands at one time; he, in fact, was given three (3) reprimands. (Exhibit A, page 11, Notification of Suspension of Johnny Ray Smith).

The plaintiff avers that by being given the six reprimands at once, he was thus deprived of the benefit of the city's general progressive disciplinary policy; a policy which generally dictates that an employee's discipline should be progressive in nature, depending upon the infraction, and should give an employee some opportunity to correct his or her actions prior to termination. (Doc. No. 10, item 8).  It should be noted, however, that the last four of his reprimands were generated within a three week period beginning January 7, 2005 and ending February 1, 2005, and that the attachment to the Recommendation for Disciplinary Action states that his violations

occurred "so often that the supervisory and administrative staff cannot process the disciplinary paperwork and administer the letters fast enough to keep up." It should also be noted that the Recommendation for Disciplinary Action clearly states that Mr. Lewis received "several verbal counselings" from both the Assistant Director and his Superintendent regarding these issues, despite the fact that he did not actually receive the written documentation until later. (Exhibit A, page 7, Attachment to Notice of Disciplinary Hearing).

Nevertheless, because there was at least a question as to whether Mr. Lewis was afforded the full opportunity to correct his actions prior to termination, and through the efforts of Mrs. Barbara Montoya, the Director of the Montgomery City-County Personnel Board, Mr. Lewis was offered his job back. Mr. Lewis refused to take his job back when offered. He also failed to show up for the due process hearing before the Montgomery City-County Personnel Board to which he was entitled and which he specifically requested. Mr. Lewis was again told by the Director of the Personnel Board that he needed only to show up for work on the following Monday and he would have his job back. Again, Mr. Lewis refused to show up. (Exhibit B, Affidavit of Barbara Montoya).

**ARGUMENT**

**I.    PLAINTIFF'S INITIAL BURDEN – Prima Facie Showing**

Since the plaintiff has alleged no direct evidence of disparate treatment, he faces the requirement of proving his case with circumstantial evidence by and through the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that analysis, a plaintiff must first "establish a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." Wilson v. B/E

Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir.,2004) *citing* McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824.

Plaintiff is clearly African-American and, thus, a member of a class protected under Title VII. Defendant concedes, too, that the plaintiff's termination was an adverse employment action. The divergence comes about with the plaintiff's comparator. If anything, the facts surrounding the treatment of the comparator show that both he and Mr. Lewis were treated similarly.

Johnny Ray Smith, too, received multiple reprimands for violating Operating Instruction No. 8, and he received them all at the same time. The difference is that Johnny Ray Smith only received reprimands for three violations in a one hundred eighty day period as compared to Mr. Lewis's six. The same rule which dictates that termination will be recommended for five or more reprimands within the one hundred eighty day period, states clearly that "[p]ersonnel receiving three (3) reprimands . . . in a one hundred eighty (180) day period for any violation in paragraph eight (8) CAN expect to receive a three (3) day suspension without pay." (Exhibit A, page 7, Operating Instruction No. 8). And a three-day suspension is exactly what Johnny Ray Smith got.

The plaintiff must fail in his prima facie showing because the rule was applied exactly as it is written to both Mr. Lewis and his comparator. While the plaintiff's receiving of all six reprimands at one time may be indicative of either understaffing or poor attention to detail at the administrative level, it does not create a prima facie showing of disparate treatment among racial classifications, and it certainly does not show, either circumstantially or otherwise, that there was any racial animus afoot.

    **II.**     **DEFENDANT'S BURDEN – Legitimate Non-discriminatory Reason**

If, for the purposes of argument, the plaintiff satisfies his initial burden, the burden then shifts to the defendant to "articulate a legitimate, non-discriminatory reason for its actions."

Smith v. City of Montgomery, Slip Copy, 2007 WL 1266867, 6 (M.D.Ala.,2007) citing McDonnell Douglas, 411 U.S. 792, 93 S.Ct. 1817.

In this case, the plaintiff was terminated in accordance with the strict requirements of the departmental Operating Instruction No. 8; plaintiff received five or more reprimands for failing to notify his supervisors that he would be late on five or more occasions during a one hundred eighty day period. (Exhibit A, page 7,). The reason for termination is the same as stated in the documentation given to the plaintiff prior to his departmental level disciplinary hearing as well as his hearing before the Mayor's representative. "The employer has a burden of production, not a burden of persuasion, and it need not persuade the court that it was actually motivated by the proffered reasons". Smith v. City of Montgomery, Slip Copy, 2007 WL 1266867, 6. By articulating this non-discriminatory reason, the defendant rebuts the presumption of discrimination created by the prima facie case and the burden, once again swings to the plaintiff. Id.

### III.    PLAINTIFF'S ULTIMATE BURDEN – Showing Pretext

Once the defendant has articulated its non-discriminatory reason for the termination, "the burden of production then shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." Id. He must have the opportunity to "demonstrate that the proffered reason was not the true reason for the employment decision." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095 (1981). The Supreme Court has said that

> This burden now merges with the ultimate burden of persuading
> the court that she has been the victim of intentional discrimination.
> She may succeed in this either directly by persuading the court that
> a discriminatory reason more likely motivated the employer or
> indirectly by showing that the employer's proffered explanation is
> unworthy of credence.

Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095 (1981) *see also* McDonnell Douglas, 411 U.S. at 804-805, 93 S.Ct. at 1825-1826.  Given the comparison to the treatment of the comparator cited in the plaintiff's complaint and the similarity with which he was treated when viewed in context with Operating Instruction No. 8, it is difficult to see how the termination would have been more likely motivated by racial animus than the mere violation of the rule.  If nothing else, the articulated reason must be worthy of credence for the same reason.

The Honorable Mark E. Fuller, Chief Judge of this District Court has observed that the plaintiff may accomplish their burden of showing pretext in a number of recognized ways. Smith v. City of Montgomery, Slip Copy, 2007 WL 1266867, 6.  The "recognized ways of establishing pretext in cases involving the termination of an employee for alleged violation of a work rule include a showing by the plaintiff either that she did not violate the work rule or that, if she did, other employees not within the protected class who engaged in similar acts were not similarly treated." Id. *See, e.g.,* Anderson v. Savage Labs., Inc., 675 F.2d 1221, 1224 (11th Cir.1982).

Clearly, there is no argument here that Mr. Lewis did not violate the work rule which the defendant cites as its non-discriminatory reason for the termination.  Neither can the plaintiff show that other similarly situated employees outside of his protected class who engaged in similar acts were treated differently; the same rule that, on its face, required the termination of the plaintiff for his six reprimands, required three days suspension for Johnny Ray Smith's three reprimands.

### IV. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing or pointing out to the district court that the non-moving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. Celotex Corp. v. Catrett, 477 U.S. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires a non-moving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, or admissions on file, designate specific facts showing there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. Fed. R. Civ. P. 56(c).

After the non-moving party has responded to a motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Yannella v. City of Dothan, 66 F. Supp. 2d 1233 (M.D. Ala. 1999).

## CONCLUSION

The plaintiff cannot make a prima facie showing of disparate treatment in this case because the rule broken by the plaintiff was applied in a like manner to his comparator.  While giving an employee multiple reprimands at one time may be indicative of less-than-ideal administrative conditions, it falls woefully short of creating a prima facie showing of disparate treatment based upon the plaintiff's racial classification.  The defendant asserts that the plaintiff's violation of Operating Instruction Nos. 6 and 8—which violations the plaintiff does not deny—are the legitimate non-discriminatory reasons for his termination.  Given the treatment of Johnny Ray Smith and the application to him of Operating Instruction No.8, the plaintiff cannot show that the reason given for his termination is a pretext for an otherwise impermissible firing.  There is no genuine issue of material fact in this case; both the plaintiff and his comparator were given multiple reprimands at one time; they may have been denied the benefits of the city's progressive disciplinary policy; and they both received the punishment set out in the Operating Instruction.  Based upon the arguments above, the defendant is entitled to a judgment as a matter of law on the disparate treatment claim.

Respectfully submitted this the 24 day of May, 2007.

    /s/ Wallace D. Mills    .
WALLACE D. MILLS (MIL090)
Assistant City Attorney

CITY OF MONTGOMERY
Legal Department
Post Office Box 1111
Montgomery, Alabama  36101-1111
(334) 241-2050
(334) 241-2310 – facsimile

## **CERTIFICATE OF SERVICE**

     I hereby certify that on the 24th day of May, 2007, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the following parties or counsel:

          Juraldine Battle-Hodge

and I hereby certify that I have mailed by United States Postal Service the document to the following:

          Juraldine Battle-Hodge, Esq
          207 Montgomery Street, Ste. 215
          Montgomery, AL  36104

          /s/Wallace D. Mills
          Wallace D. Mills
          Assistant City Attorney
          103 North Perry Street
          Montgomery, AL  36104