## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

CARL LEWIS,

        Plaintiff,

  vs.

CITY OF MONTGOMERY,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:06cv237-CSC

**CITY OF MONTGOMERY'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

      COMES NOW, the city of Montgomery, by and through undersigned counsel, and in support of its Motion for Summary Judgment, says as follows:

### PROCEDURAL HISTORY

      This case comes before this Court on the Complaint (Doc. No. 1) originally filed in this Court on March 14, 2006, a Motion for More Definite Statement (Doc. No. 4), and an Amended Complaint (Doc. No. 10), which was allowed, alleging a disparate treatment claim under Title VII of the Civil Rights Act of 1964 codified at 42 U.S.C. §2000e et. seq. based upon an alleged impermissible termination of employment based upon the plaintiff's race. The defendant answered the Amended Complaint (Doc. No. 9) denying the disparate treatment allegation and asserting the affirmative defenses that 1) a legitimate, non-discriminatory reason existed for all employment decisions, and 2) that it would have taken the adverse employment action complained of despite any discrimination based upon a protected trait or characteristic.



## FACTS

Mr. Lewis, an African American, alleges that he was treated differently from white employees when he was terminated from his employment from the City of Montgomery; that another employee, namely Johnny Ray Smith, was a similarly situated employee who was treated differently. (Doc. No. 10).

Mr. Lewis was terminated from his employment with the city of Montgomery after a departmental hearing before the Director of Fleet Management and a second hearing before the Mayor's Executive Assistant for habitually coming in late without calling. More specifically, Mr. Lewis was discharged for receiving

> [1] numerous verbal counseling sessions by [his] division superintendent regarding the need to call in when running late, [2] a verbal reminder for being late from the department's timekeeper, and [3] six (6) documented reprimands for violation of the Departmental Operating Instruction Number 8 within a six month period, to wit: failure to call [his] supervisor or the operations center before [his] shift start time advising that [he] would be late for work on the following dates: October 5, 2004, October 15, 2004, January 7, 2005, January 14, 2005, January 31, 2005 and February 1, 2005.

(Exhibit A, page 5, Attachment to Notice of Disciplinary Hearing).

Operating Instruction No. 8 states that "[w]hen employees are going to be late reporting to duty, they are to call the Control Center/Foreman PRIOR to their shift start time. Failure to do so WILL result in a Written Reprimand." (Exhibit A, page 6, Operating Instruction No. 8, *emphasis and capitalization in original*). The same rule states that "[i]f an individual receives five (5) reprimands in a one hundred eighty (180) day period, a recommendation WILL be made for dismissal from City employment." (Exhibit A, page 7, Operating Instruction No. 8, *emphasis and capitalization in original*).

Plaintiff's complaint asserts that the plaintiff was also charged with "taking time off of work without pay." (Doc. No. 10, item 11). This claim refers to the attachment to the Recommendation for Disciplinary Action, which says, among other things, that Mr. Lewis also "had made no effort to improve [his] tardiness and taking time off without leave," and it cites to Operating Instruction No. 6. (Exhibit A, page 5, Attachment to Notice of Disciplinary Hearing). Operating Instruction No. 6 and the reference to "time off without leave" is ancillary to the charge for failing to call in his tardiness, though. In essence, the period of time that Mr. Lewis was late on each of the days in question was time taken without leave because he failed to obtain prior approval as is required by Operating Instruction No. 6. (Exhibit A, page 8, Operating Instruction No. 6).

Operating Instruction No. 6 is a departmental policy dealing with the procedure for using leave time. It requires that "any employee not on the time clock should complete a leave request form." (Exhibit A, page 8-9, Operating Instruction No. 6). The rule states that vacation leave, compensatory leave, and scheduled sick leave must be requested at least 24 hours before the leave is to be effective. As for unscheduled or emergency leave, according to the policy, the employee must notify his foreman or the director or assistant director before his scheduled shift start time. The foreman, director, or assistant director, as the case may be, then, is responsible for submitting the leave form on behalf of the employee. (Exhibit A, page 9, Operating Instruction No. 6).

When read in context with the above-quoted charge, it is clear that Mr. Lewis was terminated for habitually reporting for work late without calling in advance of the appointed start time as required by both Operating Instruction Nos. 6 and 8; that his being late was a violation of Operating Instruction No. 6 merely because he did not make the appropriate leave request for the

time he missed as a result of his tardiness. (Exhibit A, page 5, Attachment to Notice of

Disciplinary Hearing). It is Operating Instruction No. 8 which dictates what punishment should

be meted out based upon the frequency of the violation. The rule states, in pertinent part:

> Personnel receiving three (3) reprimands in one or a combination
> of any of the above categories in a one hundred eighty (180) day
> period for any violations in paragraph eight (8) CAN expect to
> receive a three (3) day suspension without pay. A person receiving
> four (4) reprimands in a one hundred eighty (180) day period
> WILL be suspended without pay for a period of five (5) days. If an
> individual receives five (5) reprimands in a one hundred eighty
> (180) day period, a recommendation WILL be made for dismissal
> from City employment.

(Exhibit A, page 7, Operating Instruction No. 8, *emphasis and capitalization in original*).

Mr. Lewis received, according to the Complaint, "six (6) written reprimands at one time."

(Doc. No. 10, item 11). As his comparator, Plaintiff identifies Johnny Ray Smith, and avers that

he received similar reprimands and was only suspended for three (3) days. (Doc. No. 10, item

11). The city concedes that Mr. Lewis was given the six (6) reprimands at one time and adds that

Johnny Ray Smith, a white employee in the same department was given multiple reprimands at

one time; he, in fact, was given three (3) reprimands. (Exhibit A, page 11, Notification of

Suspension of Johnny Ray Smith).

The plaintiff avers that by being given the six reprimands at once, he was thus deprived of

the benefit of the city's general progressive disciplinary policy; a policy which generally dictates

that an employee's discipline should be progressive in nature, depending upon the infraction, and

should give an employee some opportunity to correct his or her actions prior to termination.

(Doc. No. 10, item 8). It should be noted, however, that the last four of his reprimands were

generated within a three week period beginning January 7, 2005 and ending February 1, 2005,

and that the attachment to the Recommendation for Disciplinary Action states that his violations

occurred "so often that the supervisory and administrative staff cannot process the disciplinary paperwork and administer the letters fast enough to keep up." It should also be noted that the Recommendation for Disciplinary Action clearly states that Mr. Lewis received "several verbal counselings" from both the Assistant Director and his Superintendent regarding these issues, despite the fact that he did not actually receive the written documentation until later. (Exhibit A, page 7, Attachment to Notice of Disciplinary Hearing).

Nevertheless, because there was at least a question as to whether Mr. Lewis was afforded the full opportunity to correct his actions prior to termination, and through the efforts of Mrs. Barbara Montoya, the Director of the Montgomery City-County Personnel Board, Mr. Lewis was offered his job back. Mr. Lewis refused to take his job back when offered. He also failed to show up for the due process hearing before the Montgomery City-County Personnel Board to which he was entitled and which he specifically requested. Mr. Lewis was again told by the Director of the Personnel Board that he needed only to show up for work on the following Monday and he would have his job back. Again, Mr. Lewis refused to show up. (Exhibit B, Affidavit of Barbara Montoya).

## ARGUMENT

### I.    PLAINTIFF'S INITIAL BURDEN – Prima Facie Showing

Since the plaintiff has alleged no direct evidence of disparate treatment, he faces the requirement of proving his case with circumstantial evidence by and through the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that analysis, a plaintiff must first "establish a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." Wilson v. B/E

_Aerospace, Inc.,_ 376 F.3d 1079, 1087 (11th Cir.,2004) _citing_ McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824.

Plaintiff is clearly African-American and, thus, a member of a class protected under Title VII. Defendant concedes, too, that the plaintiff's termination was an adverse employment action. The divergence comes about with the plaintiff's comparator. If anything, the facts surrounding the treatment of the comparator show that both he and Mr. Lewis were treated similarly.

Johnny Ray Smith, too, received multiple reprimands for violating Operating Instruction No. 8, and he received them all at the same time. The difference is that Johnny Ray Smith only received reprimands for three violations in a one hundred eighty day period as compared to Mr. Lewis's six. The same rule which dictates that termination will be recommended for five or more reprimands within the one hundred eighty day period, states clearly that "[p]ersonnel receiving three (3) reprimands . . . in a one hundred eighty (180) day period for any violation in paragraph eight (8) CAN expect to receive a three (3) day suspension without pay." (Exhibit A, page 7, Operating Instruction No. 8). And a three-day suspension is exactly what Johnny Ray Smith got.

The plaintiff must fail in his prima facie showing because the rule was applied exactly as it is written to both Mr. Lewis and his comparator. While the plaintiff's receiving of all six reprimands at one time may be indicative of either understaffing or poor attention to detail at the administrative level, it does not create a prima facie showing of disparate treatment among racial classifications, and it certainly does not show, either circumstantially or otherwise, that there was any racial animus afoot.

## II.    DEFENDANT'S BURDEN – Legitimate Non-discriminatory Reason

If, for the purposes of argument, the plaintiff satisfies his initial burden, the burden then shifts to the defendant to "articulate a legitimate, non-discriminatory reason for its actions."

Smith v. City of Montgomery, Slip Copy, 2007 WL 1266867, 6 (M.D.Ala.,2007) citing

McDonnell Douglas, 411 U.S. 792, 93 S.Ct. 1817.

In this case, the plaintiff was terminated in accordance with the strict requirements of the

departmental Operating Instruction No. 8; plaintiff received five or more reprimands for failing to

notify his supervisors that he would be late on five or more occasions during a one hundred

eighty day period. (Exhibit A, page 7,). The reason for termination is the same as stated in the

documentation given to the plaintiff prior to his departmental level disciplinary hearing as well as

his hearing before the Mayor's representative. "The employer has a burden of production, not a

burden of persuasion, and it need not persuade the court that it was actually motivated by the

proffered reasons". Smith v. City of Montgomery, Slip Copy, 2007 WL 1266867, 6.  By

articulating this non-discriminatory reason, the defendant rebuts the presumption of

discrimination created by the prima facie case and the burden, once again swings to the plaintiff.

Id.

## III.    PLAINTIFF'S ULTIMATE BURDEN – Showing Pretext

Once the defendant has articulated its non-discriminatory reason for the termination, "the

burden of production then shifts to the plaintiff to offer evidence that the alleged reason of the

employer is a pretext for illegal discrimination." Id. He must have the opportunity to

"demonstrate that the proffered reason was not the true reason for the employment decision."

Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095 (1981).

The Supreme Court has said that

> This burden now merges with the ultimate burden of persuading
> the court that she has been the victim of intentional discrimination.
> She may succeed in this either directly by persuading the court that
> a discriminatory reason more likely motivated the employer or
> indirectly by showing that the employer's proffered explanation is
> unworthy of credence.

Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095 (1981) *see also* McDonnell Douglas, 411 U.S. at 804-805, 93 S.Ct. at 1825-1826.  Given the comparison to the treatment of the comparator cited in the plaintiff's complaint and the similarity with which he was treated when viewed in context with Operating Instruction No. 8, it is difficult to see how the termination would have been more likely motivated by racial animus than the mere violation of the rule.  If nothing else, the articulated reason must be worthy of credence for the same reason.

The Honorable Mark E. Fuller, Chief Judge of this District Court has observed that the plaintiff may accomplish their burden of showing pretext in a number of recognized ways. Smith v. City of Montgomery, Slip Copy, 2007 WL 1266867, 6.  The "recognized ways of establishing pretext in cases involving the termination of an employee for alleged violation of a work rule include a showing by the plaintiff either that she did not violate the work rule or that, if she did, other employees not within the protected class who engaged in similar acts were not similarly treated." Id. See, e.g., Anderson v. Savage Labs., Inc., 675 F.2d 1221, 1224 (11th Cir.1982).

Clearly, there is no argument here that Mr. Lewis did not violate the work rule which the defendant cites as its non-discriminatory reason for the termination.  Neither can the plaintiff show that other similarly situated employees outside of his protected class who engaged in similar acts were treated differently; the same rule that, on its face, required the termination of the plaintiff for his six reprimands, required three days suspension for Johnny Ray Smith's three reprimands.

### IV. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing or pointing out to the district court that the non-moving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires a non-moving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, or admissions on file, designate specific facts showing there is a genuine issue for trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. <u>Fed. R. Civ. P. 56(c).</u>

After the non-moving party has responded to a motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Yannella v. City of Dothan</u>, 66 F. Supp. 2d 1233 (M.D. Ala. 1999).

## CONCLUSION

The plaintiff cannot make a prima facie showing of disparate treatment in this case because the rule broken by the plaintiff was applied in a like manner to his comparator. While giving an employee multiple reprimands at one time may be indicative of less-than-ideal administrative conditions, it falls woefully short of creating a prima facie showing of disparate treatment based upon the plaintiff's racial classification. The defendant asserts that the plaintiff's violation of Operating Instruction Nos. 6 and 8—which violations the plaintiff does not deny—are the legitimate non-discriminatory reasons for his termination. Given the treatment of Johnny Ray Smith and the application to him of Operating Instruction No.8, the plaintiff cannot show that the reason given for his termination is a pretext for an otherwise impermissible firing. There is no genuine issue of material fact in this case; both the plaintiff and his comparator were given multiple reprimands at one time; they may have been denied the benefits of the city's progressive disciplinary policy; and they both received the punishment set out in the Operating Instruction. Based upon the arguments above, the defendant is entitled to a judgment as a matter of law on the disparate treatment claim.

Respectfully submitted this the 24 day of May, 2007.


_/s/ Wallace D. Mills_____.
WALLACE D. MILLS (MIL090)
Assistant City Attorney

CITY OF MONTGOMERY
Legal Department
Post Office Box 1111
Montgomery, Alabama 36101-1111
(334) 241-2050
(334) 241-2310 – facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May, 2007, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the following parties or counsel:

Juraldine Battle-Hodge

and I hereby certify that I have mailed by United States Postal Service the document to the following:

Juraldine Battle-Hodge, Esq
207 Montgomery Street, Ste. 215
Montgomery, AL  36104

/s/Wallace D. Mills
Wallace D. Mills
Assistant City Attorney
103 North Perry Street
Montgomery, AL  36104

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

CARL LEWIS,              )   Case No.: 2:06cv237-CSC
        Plaintiff,    )
                   )   **AFFIDAVIT OF TERRY GADDIS**
    vs.              )
                   )
CITY OF MONTGOMERY,   )
        Defendant.   )
                   )
                   )
                   )
                   )
                   )

STATE OF ALABAMA

COUNTY OF MONTGOMERY

     In person appeared before the undersigned officer, duly authorized to administer

oaths, Terry Gaddis, who, after being duly sworn, states under oath as follows:

     1.    I am the Director of Fleet Management for the city of Montgomery and

have personal knowledge of the facts set forth in this affidavit.  I am an adult resident

citizen of the state of Alabama and am competent to testify to the matters set forth herein.

     2.    Carl Lewis worked for me in the Fleet Management Department of the

city of Montgomery prior to his termination.  I recommended his termination based upon

repeated violations of Operating Instruction No.8 despite repeated verbal warnings from

both me and his Superintendent, Royce Albright.

     3.    Mr. Lewis's violations of the Operating Instruction No. 8 became so

frequent in late 2004 and early 2005 that it became difficult for my staff to keep up.  Due

to an administrative staff shortage and increased work load in late 2004, my staff was

1



unable to type up and present a particular written reprimand to Mr. Lewis before he had committed the next successive violation. Mr. Lewis was, however, verbally warned about his habitual tardiness on several occasions during the 180 day period immediately prior to his termination. In fact, on January 31, 2005 his Superintendent, Royce Albright, had a very serious discussion with Mr. Lewis after he reported to work late that morning without calling in to notify us by his appointed start time. Mr. Lewis was, yet again, late for work the very next morning, and he, again, failed to call in to notify us before his appointed start time. It is imperative that the employees in my department notify their forman when they will not be there to work so that the staff can plan for manpower shortages, necessary shift changes, and overtime.

4.      Johnny Ray Smith is a white male who worked in my department at the same time as Carl Lewis. Johnny Ray Smith was presented with three written reprimands at one time for late arrival without prior notification, violations of Operating Instruction No. 8 which occurred on three separate occasions in 2003, to wit: June 6, 2003, June 25, 2003, and May 7, 2003. Johnny Ray Smith was suspended for three days in accordance with the discipline set out in the rule.

5.      Attached hereto are records from my departmental files, including a Notice of Departmental Disciplinary Hearing on Carl Lewis dated Feb. 7, 2005, with attachment, Operating Instruction No. 8, Operating Instruction No. 6, and a Notification of Suspension on Johnny Ray Smith dated August 1, 2003. Each of these documents was either made by me or under my supervision at or near the time of the events set out therein. They were made in the ordinary course of business, and they have been kept by me in the ordinary course of business. I hereby incorporate the statements made in those

2



EXHIBIT

A, page 2

documents into this affidavit by reference as if they were fully set out herein, and swear
and affirm that the statements made were made as they are represented therein.

    5.     Further, the affiant saith not.

_____
Terry Gaddis

STATE OF ALABAMA

COUNTY OF MONTGOMERY

    I, the undersigned notary public in and for said county in said state, hereby certify
that Terry Gaddis, whose name is signed to the foregoing affidavit, and who is known to
me, after being fully informed of the contents of the instrument, signed and executed the
same voluntarily after first being duly sworn by me on the date set forth below.
    GIVEN under my hand and official seal, this _24th_ day of
_May_____, 2007

_____
NOTARY PUBLIC

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Sept 23, 2009
BONDED THRU NOTARY PUBLIC UNDERWRITERS
My Commission Expires:_____

**EXHIBIT**

A, page 3

3

PER FORM 31
Revised 01/05

## NOTICE OF DEPARTMENTAL DISCIPLINARY HEARING

Carl Lewis
_____
Employee's Name

4510 Lakeshore Drive
_____
Street Address

Millbrook, AL  36054
_____
City, State and Zip

Please be advised that a departmental hearing has been scheduled:

February 10, 2005 at 9:00 a.m.          Director's Office
_____          _____
Month, Day, Year, Time (to include a.m. or p.m.)          Location of disciplinary hearing

The purpose of a departmental hearing is to consider disciplinary action against you for the following reasons: (attach additional sheets as required).


SEE ATTACHMENT



You may be present if you desire and you may respond orally and/or in writing at the time of the hearing. You may not be represented by attorney at department level. The appointing authority may designate the department head or some other representative to act on his or her behalf in taking disciplinary actions. You will be advised in writing if you are entitled to a hearing before the appointing authority or his or her designee, before any disciplinary action becomes final, and you will be given the opportunity to waive your appearance at that hearing.

_____
Departmental Head

I hereby certify that this document was given to the employee or placed in the United States mail on

2        7        05
_____
(Month        Day        Year)

Signed: _____

Witness: _____

I hereby acknowledge receipt of this notification of said charges and of the hearing thereon.

_____
Employee

**EXHIBIT**

A, page 4

ATTACHMENT TO NOTIFICATION OF DEPARTMENTAL HEARING FOR CARL LEWIS

CHARGES:

Numerous verbal counseling sessions by your division superintendent, a verbal reminder for being late from the department's timekeeper and six (6) documented violations of Departmental Operating Instruction Number 8 to wit:  failure to call your supervisor or the operations center before your shift start time advising that you would be late for work on the following dates – October 5, 2004, October 15, 2004, January 7, 2005, January 14, 2005, January 31, 2005 and February 1, 2005.

As stated above, you received several verbal counselings, one from the Assistant Director concerning you taking excessive time off with no accumulated leave, as well as your superintendent's verbal counselings for being tardy and not calling to let him or anyone else know you would be late to work prior to receiving each of these letters of reprimand. You also acknowledged your understanding of Departmental Operating Instruction (OI) Number 6 and the disciplinary consequences if you did not comply.  I have advised all employees throughout my tenure as Director to refresh their memory of all department OIs every six months.

You have made no effort to improve your tardiness and taking time off without leave.  In fact, you have continued to come to work late, take time off without leave and failed to call in prior to your shift start time to say you would be late so often, that the supervisory and administrative staff cannot process the disciplinary paperwork and administer the letters of reprimand fast enough to keep up.

**EXHIBIT**

A, page 5

CITY SHOPS DEPARTMENT                OPERATING INSTRUCTION NO. 08

                                     REVISION 23 JULY 1997


TO:        All Department Personnel

SUBJECT:   Time Accounting System

PURPOSE:   To establish the policy and procedure of using time
           clock and time accounting


1.  The time accounting system is a management tool that benefits
both the employee and employer. The time clock provides the
employee with a document that verifies the number of hours worked
on any given day. It also assures that any overtime work is
properly credited. EXCEPTION: The following City Shops employ-
ees are exempt from the Time Clock: Director, Assistant Direc-
tor, Production Controller, Foremen, Master Mechanics, Petroleum
Maintenance Supervisor and Clerical Personnel.

2.  Punching a time clock is the responsibility of each individu-
al. It is not permissible for any person to clock in or out with
a time card other than their own.

3.  Neglect or failure to clock in or out is considered a viola-
tion.

4.  Personnel may clock in no earlier than seven (7) minutes
prior to their scheduled work shift time. A person clocking in
earlier than seven (7) minutes before scheduled shift start time
will be considered in violation.

5.  Personnel may clock out no earlier than five (5) minutes
prior to the end of their shift. A person clocking out earlier
than five (5) minutes before scheduled shift ends will be consid-
ered in violation.

6.  When employees are going to be late reporting to duty, they
are to call the Control Center/Foreman PRIOR to their shift start
time. Failure to do so WILL result in a Written Reprimand. A
person clocking in after his scheduled shift start time is
considered "late", even if it is just one minute.

7.  When an employee leaves the premises during a scheduled lunch
break and cannot return to work because of sickness or unforseen
emergency, failure to notify Control Center/Foreman will result
in a Written Reprimand. It is the responsibility of the Control
Center/Foreman to inform the Assistant Director and a Time Clerk
for time accounting purposes.



EXHIBIT

A, page 6

CITY SHOPS DEPARTMENT                    OPERATING INSTRUCTION NO. 08
                           CONTINUED
                                        REVISION 23 JULY 1997

8.   These are the categories of "Time Clock Violations".

       A.   Clocking IN/OUT for another person.
       B.   Failure to clock IN or OUT.
            (See Memorandum dated 1/24/96.)
       C.   Clocking in EARLY without approval.
            1) Clocking in prior to seven (7) minutes
               before scheduled shift start time.
       D.   Clocking out EARLY without approval.
            1) Clocking out prior to five (5) minutes
               before shift end time.
       E.   Failure to call in PRIOR to shift start time.
            (Or to inform of lateness status.)
       F.   Failure to call back during lunch when not
            returning or returning late.

9. Personnel receiving three (3) reprimands in one or a combina-
tion of any of the above categories in a one hundred eighty (180)
day period for any violations in paragraph eight (8) CAN expect
to receive a three (3) day suspension without pay. A person
receiving four (4) reprimands in a one hundred eighty (180) day
period WILL be suspended without pay for a period of five (5)
days. If an individual receives five (5) reprimands in a one
hundred eighty (180) day period, a recommendation WILL be made
for dismissal from City employment. To explain "a 180-day
period": Receiving a second, third, etc., letter of reprimand
before the 180-day period for that letter expires, extends the
time by 180 days from the date of the second, third, etc. letter.

10. Disposition of Reprimands for Time Clock Violations after 180
days:

       A.   Reprimands shall remain in the individual's personnel
            file.

       B.   Reprimands over 180 days will not be used to justify
            disciplinary action to be taken in accordance with Para-
            graph 9 above.

TERRY H. GADDIS, DIRECTOR
CITY SHOPS DEPARTMENT

EXHIBIT

A, page 7

CITY SHOPS DEPARTMENT                                    OPERATING INSTRUCTION NO. 06

REVISION 21 JANUARY 2000

TO:    All Department Personnel

SUBJECT: Leave Request

PURPOSE: To establish policy and procedure for requesting vacation leave. compensatory leave, personal leave day, emergency leave, schedule sick leave, military leave and for control of personnel absenteeism.

   The following procedures shall be strictly followed.

1.   GENERAL: ALL leave requests must be submitted on a leave request form and presented to your immediate supervisor (Foreman or Master Mechanic) for his approval or disapproval.

   A.   ANY employee not on the time clock should complete a leave request form. If the amount of time off is not known when the form is completed, the Assistant Director or time clerk should be notified of the actual time taken prior to 0730 Hours the morning of the following work day. Failure to follow this procedure will result in the employee being charged the remaining hours on his duty shift that day and the employee can expect to receive disciplinary action.

2.   VACATION AND COMPENSATORY LEAVE: Request for vacation or compensatory leave must be submitted on a leave request form and presented to your immediate supervisor (Foreman or Master Mechanic) at least twenty-four (24) hours before the leave is to be effective. Your supervisor will either approve or disapprove the request. Should it be disapproved, no further action will be taken. When a request is approved by the supervisor, the request form will then be initialed by Foreman (if he is not the immediate supervisor), the Production Controller and in turn by the Assistant Director or the Director of the Department. The payroll clerk will get the leave request form and take the necessary administrative action to ensure the proper amount and type of leave is charged to the individual. After the payroll clerk has documented the leave time, the leave form will be returned to the individual's Foreman for future reference.

3.   PERSONAL LEAVE DAYS: Personal leave days are processed the same as vacation and compensatory time except that a full day (8 hours) must be taken. Personal days cannot be carried over from one year to the next and must be taken no later than end of pay period ending the fiscal year or they will be forfeited.

4.   EMERGENCY LEAVE: Emergency leave request will be processed in the same manner as vacation and compensatory leave with the exception: When an emergency exists during off duty hours (including lunch breaks taken off premises), the employee must call his/her supervisor (Foreman or Master Mechanic) before the beginning of his/her scheduled shift start time, explain the nature of the emergency and approximate length of time he/she will be absent. The Foreman or Master Mechanic will be responsible for submitting the leave form through the prescribed channels

5.   SICK LEAVE: Scheduled sick leave requests (doctor/dentist appointments, medical tests, etc.) will be processed the same as vacation and compensatory leave with the following exceptions:

EXHIBIT

A, page 8

Should an employee get sick while on duty, he/she will notify his/her supervisor, fill out a leave request form and then be allowed to leave work. The supervisor will be responsible for submitting the form through prescribed channels (Item #2 above).

B. When an employee is sick or injured during off duty hours, or a member of the employee's family is ill or injured requiring the employee's presence at home, they will:

(1) Call his/her supervisor (Foreman or Master Mechanic) and explain the nature of illness or injury and request permission to be off. If the individual cannot get in touch with his/her supervisor (Foreman or Master Mechanic) he/she must call the Director or Assistant Director and explain the nature of illness or injury and request permission to be off.

(2) Employee must call before his/her scheduled shift start time. Should the employee be incapacitated and unable to call, he/she will be held responsible to have someone call for him/her.

(3) Employee must call each day he/she is absent due to unscheduled sickness or injury, before his/her scheduled shift start time. The Director or Assistant Director may eliminate this requirement depending on individual circumstances.

(4) A doctor's certificate may be required stating the kind and nature of injury or illness of the employee or member of the immediate family.

C. Sick Leave may be granted only for absence due to personal illness, maternity, legal quarantine, attendance upon members of the immediate family whose illness requires the care of the employee, or death in the immediate family of the employee. Immediate family is hereby defined to include spouse, children, parents, grandparents, parents-in-law, and siblings.

D. Unusually strong ties with other relatives may be recognized for sick leave purposes upon written justification by the employee and approval of the appointing authority and/or Personnel Director.

E. An employee claiming sick leave may be required by his/her supervisor (Foreman or Master Mechanic), the Director, or Assistant Director to file a certificate from a physician stating the kind and nature of sickness or injury, that the employee was incapacitated for work for the period of absence, that the employee is physically unable to perform duties or that the employee has no contagious disease that might jeopardize the health of other employees, or that the employee is required to provide care for an ill family member. It shall be the decision of the supervisor to make a decision, based on the individual's attendance and disciplinary record, as to whether proof for such absence is necessary. This is to include physicians excuses for claims of sickness

6.  MILITARY LEAVE:  All officers and employees of the State of Alabama or any county, municipality or other agency or political subdivision thereof, or officers or employees of any public or private business or industry who shall be active members of the Alabama National Guard, Naval Militia or the Alabama State Guard organized in lieu of the National Guard, or any other reserve component of the armed forces of the United States, shall be entitled to military leave of absence from their respective civil duties and occupations on all days that they shall be engaged in field or coast defense or other training or on other service under the provisions of the National Defense Act, or the Federal Laws governing the United States reserves, without loss of pay, time efficiency rating, annual vacations or sick leave, but no such person granted such leave of absence with pay shall be paid for more than twenty-one (21) working days per endar year, and such persons shall be entitled, in addition thereto, to be paid for no more than twenty- .e (21) working days at any one time while called by the governor to duty in the active service of the

EXHIBIT

A, page 9

state. This section shall apply to all schools and institutions of learning supported by state funds.

Each employee must request a leave of absence for Military Leave and this request may be made on the Departmental "Request for Leave" form.

B. Beginning 1 January of each year, those persons who request Military Leave of Absence will be charged one (1) Military Day for each day they are absent from their employment up to twenty-one (21) days. This will be leave <u>with</u> pay.

C. At the expiration of the twenty-one (21) days of paid military leave, the department head should inform the employee that any subsequent days taken for military duty shall be with leave without pay unless such employee submits a signed leave request advising the department that the employee wishes the department head to charge the employee with vacation leave, or compensatory leave, in lieu of leave without pay.

D. Under no circumstances will Sick Leave be substituted in lieu of leave without pay or Vacation Leave.

E. A copy of orders directing participation on Active Duty is to be submitted along with request for Military Leave.


7.    Failure to comply with these rules will result in the employee being placed on unauthorized and/or unreported absence, not receive any pay for the affected number of days absent and be subject to appropriate disciplinary action. Additionally, any unauthorized or unreported absence from work for a period of three (3) days or more may be considered as a resignation as outlined in City and County of Montgomery Personnel rules and Regulations, Rule IX, Section 1.


8.    Violations of any of the above provisions may be cause for Written Reprimand, Suspension Without Pay, or Recommendation for Dismissal.

TERRY H. GADDIS, DIRECTOR
CITY SHOPS DEPARTMENT

EXHIBIT

A, page 10

Revised 12/01

Certified Mail
Return Receipt Requested

Date: _____August 1, 2003_____

## NOTIFICATION OF SUSPENSION

Employee's Name _____Johnny Ray Smith_____

Street Address _____168 Hillside Ridge_____

City/State/Zip _____Wetumpka, AL  36093_____

This is to notify you that as of this date, you are herewith suspended without pay for the period of
3 Days Starting 4 August 2003 - 6 August 2003 and Returning 7 August 2003

The reason(s) for this suspension is (are) (List all charges - attach additional sheets as required):

Third violation of late arrival without prior notification, as required by Fleet Management Operating Instruction #8.
***25 June 2003, 6 June 2003, 7 May 2003.***

Previous record considered (List all actions considered - attach additional sheets as required):

See Attached.

### APPEAL RIGHTS

Suspensions in excess of 30 calendar days in any fiscal year may be appealed to the Personnel Board.  Suspensions of 30 calendar days or less may not be appealed to the Personnel Board except as may be other wise provided in Personnel Rules and Regulations, Rule VIII, Section 12 and Rule VII, Section 12 or 13.

A permanent employee who has received a suspension appealable under Personnel Rules and Regulations may answer these charges within three (3) days from the date of receipt of the notification of suspension by responding in writing to the Appointing Authority and providing a copy to the Personnel Director, who is located at 520 South Court Street.

Within ten (10) days from the time for filing your answer, if you desire a hearing before the Personnel Board you must file a written request with the Personnel Director.

Consult the Montgomery City-County Personnel Department, 520 South Court Street, relative to any other rights you have under the Merit System Law.

I hereby certify that this document was given to the employee or placed in the United States mail on

_____August 1, 2003_____
month/day/year

_____
Department Head/Appointing Authority

_____
Employee

Director, Fleet Manag
Title

EXHIBIT
A, page 11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

CARL LEWIS,                     )
        Plaintiff,       )
                      )
   vs.                  )
                      )   Case No.: 2:06cv237-CSC
CITY OF MONTGOMERY,     )
        Defendant.    )
                      )

---

STATE OF ALABAMA    )
                        )
MONTGOMERY COUNTY )

### AFFIDAVIT OF BARBARA MONTOYA

     I, Barbara Montoya, having first been duly sworn, do depose and say under oath as follows:

     1. My name is Barbara Montoya and I am the Personnel Director for the Montgomery City-County Personnel Board, an independent board set up by Act 2280 of the Alabama Legislature to oversee and advise the City of Montgomery and Montgomery County on personnel issues.

     2. I am familiar with the case of Carl Lewis. Mr. Lewis notified me, as Director, that he wished to appeal the decision of the Mayor of Montgomery terminating his employment to the Personnel Board.

     3. Having become familiar with the facts surrounding Mr. Lewis's termination, it became apparent that Mr. Lewis was given six (6) separate reprimands on one occasion and that his termination was premised on a rule that allowed for termination when the employee had five or more violations within a one hundred eighty (180) day period.

     4. While the policy of the City Shops does not specifically require that the employee be given each reprimand before the next may be written, I believe that that is the intent of the rule. Also, the City of Montgomery's general progressive disciplinary policy is designed to give an employee an opportunity to experience punishment in progressive stages in order to afford them an opportunity to correct their conduct prior to being terminated. Mr. Lewis expressed to me that he did not feel that he had been given sufficient warning that termination was imminent. I agreed.

     5. Based upon the above, I intervened on behalf of Carl Lewis. I spoke with Mr. Lewis personally and on the telephone on several occasions. I told Mr. Lewis that I did not have the

**EXHIBIT**

B

authority to order his return to work but, with his permission, I would attempt to negotiate his reinstatement. If my efforts were not successful, he could go forward with the hearing that had been scheduled before the Montgomery City-County Personnel Board. Mr. Lewis agreed to allow me to intervene with City of Montgomery management officials. I spoke with Michael Briddell, Executive Assistant to the Mayor, with Terry Gaddis, Director of the Department of Fleet Management and with Gene Knox, Assistant Director of the Department of Fleet Management. The purpose of those conversations was to advise those authorities that Mr. Lewis deserved to be on notice that his job was in jeopardy in order to give him the opportunity to improve and to request that Mr. Lewis be reinstated. City officials including the Mayor agreed to give Mr. Lewis another chance. He was given several opportunities to go back to work. On the first occasion, he was to meet with Mr. Briddell and Mr. Gaddis to discuss his return to work. Mr. Lewis did not appear for that meeting. Following his failure to appear, he advised me that he knew he made a mistake. I intervened on his behalf again and it was agreed that he could report to work and would meet with his supervisors when he reported. He did not report to work as scheduled; neither did he appear at the scheduled hearing before the Personnel Board.

6. I am aware of no racial animus or disparate treatment received by Mr. Lewis by the City of Montgomery. In fact, everyone I spoke with stated that Mr. Lewis was a good employee and an excellent motorcycle mechanic. His only problem was that he could not be allowed to have less stringent time and attendance standards than all other Fleet Management employees. But for his own actions, Mr. Lewis could be working for the City of Montgomery today.

7. The above information is true and correct to the best of my knowledge, information and belief.

Further the affiant saith not.

Barbara Montoya
Director of the Montgomery City-
County Personnel Board

Subscribed and sworn to before me this 24th day of May, 2007.

Notary Public
My Commission Expires: 3-16-11