IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CARL LEWIS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CITY OF MONTGOMERY, )<br>)<br>Defendant. )<br>) | Case No.: 2:06cv237-CSC<br><br>**CITY OF MONTGOMERY'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT** |

COMES NOW the city of Montgomery, Defendant in the above-styled action, by and through undersigned counsel, and in reply to Plaintiff's Memorandum Brief in Opposition of Defendant's Motion for Summary Judgment (Doc. No. 21) says as follows:

**I.   New Comparators**

In Plaintiff's brief in opposition to the Motion for Summary Judgment, Plaintiff names three new comparators whom were not identified in this case prior thereto, namely: John Hopper, Paul Evans, and Karen Barnes. (Doc. No. 21, page 8). More specifically, the plaintiff alleges that these three employees "were allowed to take time off of work without pay without being interrogated or fired." (Doc. No. 21, page 8). While the city Garage has no employees by those exact names, they have had employees with similar names, to wit: John Hooper, Paul Ammons, and James Barnes. (Exhibit A, Affidavit of Terry Gaddis).[1]

---

[1] It should be noted that the plaintiff listed the same names in his EEOC charge, except that Paul Ammons was named in that charge as "Paul Commons."

1

EXHIBIT B

Under the McDonnell Douglas analysis, a plaintiff must show, among other elements, that he was treated differently than similarly situated employees who are not a part of his protected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792 at 802, 93 S.Ct. at 1824 (1973).

### A.   John Hooper

John Hooper took an extended leave and made a written claim for leave under the Family and Medical Leave Act for degenerative hip disease, in addition to other gastrointestinal ailments. (Exhibit A, Affidavit of Terry Gaddis; Exhibit A1, Personnel File of John Hooper). Further, his personnel file is filled with doctors' notes verifying that he had been under a physician's care and excusing his absence. Hooper, in fact, wound up applying for and receiving a medical retirement on May 15, 2004. (Exhibit A1, Personnel file of John Hooper). So, in effect, John Hooper did take time off without pay, but he did so in such a fashion that he did not violate Operating Instruction No. 6 (Exhibit A to Brief in Support of Motion for Summary Judgment, p. 8-9), the garage's policy dealing with the procedure for using leave time.

### B.   James Barnes

Similarly, James Barnes used up his sick leave on a pre-approved absence for surgery to cure a serious hemorrhoid problem. His leave, too, was pre-approved in accordance with Operating Instruction No. 6, but he used his sick leave, and sick leave which was donated to him by fellow employees. He never went on leave without pay. (Exhibit A, Affidavit of Terry Gaddis, Exhibit A2, Personnel File of James Barnes).

### C.   Paul Ammons

There is no mention of any leave without pay which was not pre-approved in the personnel file of Paul Ammons, who retired on December 12, 2004, except on two occasions. In April of 2002 and November of 1997, Ammons was reprimanded for violating Operating

Instruction No. 6. (Exhibit A2, Personnel File of Paul Ammons).[2] These violations, however, were five years apart, and did not bring him into violation of Operating Instruction No. 8, which deals with progressive discipline for excessive violations of Operating Instruction No. 6 within given periods of time.

The comparators named by plaintiff are not sufficiently similarly situated to fulfill the plaintiff's initial burden under the McDonnell Douglass framework because John Hooper and James Barnes never violated Operating Instruction No. 6 (leave policy), and Paul Ammons only violated it twice—the violations being five years apart, thus exempting him from the punitive effect of Operating Instruction No. 8 (progressive discipline policy for leave violations).

## II. Harassment

The plaintiff has also alleged a new claim of harassment in his brief in opposition to the Motion for Summary Judgment. Plaintiff claims that his "work was sabotaged"; that "[t]he rear tire of the Police motorcycle [on which he was, presumably, working] was clearly cut"; and that "Plaintiff was being harassed."

### A. Administrative remedy not Exhausted

Prior to filing a Title VII action, a plaintiff first must exhaust [his] administrative remedies by filing a charge of discrimination with the EEOC. Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir.2004). While the plaintiff in this case did file a charge with the EEOC, the charge contained nothing to suggest that there was a harassment claim (Exhibit B, EEOC charge[3]). "A plaintiff's judicial complaint is limited by the scope of the EEOC

---

[2] As argued in the Brief in Support of Motion for Summary Judgment, Lewis was terminated for violating Operating Instruction No. 8, more specifically, his being issued six reprimands within a six-month period for violating Operating Instruction No. 6—habitually coming in late without pre-approval, thus going into leave without pay status.

[3] The EEOC charge is offered as an exhibit based upon this Court's finding that "[m]aterials contained in an EEOC charge, signed under perjury, are likely to be reduced to admissible form at trial" within the meaning of Rule 56. Dinkins v. Charoen Pokphand USA, Inc., 133 F.Supp2d 1254, 1258 note 8 (M.D. Ala.,2001). The charge is offered as prior inconsistent statement under 613(b) Fed.R.Evid., as an admission by a party opponent under 801(d)(2) Fed.R.Evid., and as an exception to the hearsay rules under 803(8)(B).

investigation that 'can reasonably be expected to grow out of the charge of discrimination.'" Ramon v. AT&T Broadband, 195 Fed.Appx. 860, 865 (11th Cir.2006) *citing* Gregory v. Georgia Department of Human Resources, 355 f.3d 1277, 1280 (11th Cir.2004).

In the Ramon case, the Eleventh Circuit upheld a summary judgment of a hostile work environment claim based upon the plaintiff's failing to allege the claim in her EEOC charge. They said,

> Ramon has pointed to no allegation in her EEOC charge that reasonably points to the kind of pervasive and oppressive conditions that would allow us to conclude that she intended to have the EEOC investigate the workplace for a hostile work environment... Because neither a retaliation nor a hostile work environment claim could have reasonably been expected to grow of the allegations made by Ramon in her EEOC charge, the district court did not err by finding that she failed to exhaust those claims.

Ramon v. AT&T Broadband, 195 Fed.Appx. at 865.

The same is true of this case. Nothing in the EEOC charge filed by Mr. Lewis even hints at the type of oppressive work conditions that a hostile work environment claim is meant to embrace. He specifically mentions in his charge that there was "disparate treatment" and that he was treated differently than other employees with regard to using leave without pay, but nowhere does he mention anything like the alleged cutting of the motorcycle tire. (Exhibit B, EEOC charge).

For these reasons, Lewis has failed to exhaust his administrative remedies as they may apply to his hostile work environment claim.

**B.   Elements – Hostile Work Environment**

Since there was no allegation of any quid pro quo offer, and the plaintiff does not allege that he was forced to resign (constructive discharge), the claim can only be interpreted as one for

hostile work environment harassment. In order to establish a hostile work environment claim, a plaintiff must show "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment . . . [was] based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." Miller v. Kenworth of Dothan, 277 F.3d 1269, 1275 (11th Cir.2002).

### 1. Terms and Conditions

In determining whether harassment objectively altered an employee's terms or conditions of employment under the fourth element above, the Court should look to four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir.1999) citing Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir.1991).

As to element one of the analysis—the frequency of the conduct—the plaintiff has alleged only one incident which may be interpreted as harassment, namely that a tire on a motorcycle was cut (Doc. No.21, page 10). Likewise there is no evidence to guide the Court in determining whether the tire was intentionally cut as some sort of threat, or by whom it may have been cut. It is, therefore, impossible to tell whether the conduct fulfills the third and fourth factors—whether the conduct was physically threatening or humiliating, and whether it unreasonably interfered with Lewis's job performance. It seems, based upon the scant facts alleged, to be an isolated incident at best.

### 2. Employer Liability

In order to establish liability against the employer for hostile work environment, an employee must show that the employer knew or should have known of the harassment in

question and failed to take prompt remedial action. <u>Kilgore v. Thompson & Brock Management Inc.</u>, 93 F.3d 752, 753 (11th Cir.1996); <u>Henson v. City of Dundee</u>, 682 F.2d 897, 905 (11th Cir.1982). "The employee can show that the employer had knowledge of the harassment by proving that he complained to higher management of the problem or by demonstrating that the harassment was so pervasive that an inference of constructive knowledge arises." <u>Kilgore</u>, 93 F.3d at 753-54. In this case, there is no allegation that "higher management" had any knowledge of any harassment at all, much less an allegation that Lewis had complained of it. And because the plaintiff has only alleged one factual incident, the conduct cannot be said to have been so pervasive as to raise an inference of constructive knowledge.

### 3. Harassment not Based on Protected Characteristic

An essential element in any harassment claim under Title VII is that the harassment was based upon a protected characteristic of the employee. <u>Miller v. Kenworth of Dothan</u>, 277 F.3d 1269, 1275 (11th Cir.2002). In essence, he must make some factual showing that there was some class-based discriminatory intent in the harassment. While the plaintiff does argue that he was treated disparately based upon his race, he falls short of this on his harassment claim, primarily because he can elicit no facts which point to who, in fact, committed the allegedly harassing conduct—the cutting of the motorcycle tire.

### III. Motion to Strike Exhibits

In its order dated May 31, 2007, this Court made specific reference to Rule 56(e) of the Federal Rules of Evidence dealing with documents submitted in opposing a motion for summary judgment. In that order, the Court pointed out that the plaintiff could not rely "on unsworn pleadings, but must oppose the motion by filing sworn affidavits." (Doc. No. 18, page 2). As exhibits to his response to the City's Motion for Summary Judgment (Doc. No. 20), the plaintiff attached nine documents, the first of which is a brief in support of that response. Exhibits one through four are pleadings already filed in this case. Exhibit five is a handwritten note that was

written by Carl Lewis to Terry Gaddis. Exhibit six is a memorandum written from Robert Shuford, a garage employee, to the City County Personnel Board. Exhibit seven is an affidavit executed by the plaintiff, and Exhibit 8 is a document written by Carl Lewis and submitted to the city of Montgomery in response to his termination.

The city of Montgomery hereby objects to Exhibits five (5), six (6), and eight (8) submitted with the plaintiff's Response to Summary Judgment (Doc. No. 20) and moves to strike the said exhibits. The documents are not in affidavit format as is required by 56 (e) and are not likely to be reduced to admissible form at trial because they are all out of court statements submitted to prove the truth of the matter asserted therein as prohibited by 801(c) Fed. R. Evid., and they do not fall within any of the exceptions set out in Rules 803 and 804 Fed. R. Evid. Dinkins v. Charoen Pokphand USA, Inc., 133 F.Supp2d 1254, 1258 note 8 (M.D. Ala.,2001).

## CONCLUSION

None of the new comparators identified by the plaintiff are similarly situated to the plaintiff. They either did not violate the same rule that Carl Lewis violated (Operating Instruction No. 6), or they did it with significantly less frequency than did Carl Lewis, the frequency causing him to violate Operating Instruction No. 8.

The plaintiff cannot properly bring his harassment claim at this time because he has failed to exhaust his administrative remedies; he did not allege a hostile work environment claim in his EEOC charge. Furthermore, he has failed to allege facts which would support a finding of harassment because he has not shown how the alleged harassment adversely affected the terms and conditions of his employment. He has also failed to allege facts which would support a finding that the harassment was based upon a protected characteristic because he doesn't know who allegedly cut the motorcycle tire. And, finally, the isolated incident alleged cannot be sufficient to support a finding of employer liability in this case.

Respectfully submitted this the 17 day of July, 2007.

/s/ Wallace D. Mills
WALLACE D. MILLS (MIL090)
Assistant City Attorney

CITY OF MONTGOMERY
Legal Department
Post Office Box 1111
Montgomery, Alabama 36101-1111
(334) 241-2050
(334) 241-2310 – facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of July, 2007, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the following parties or counsel:

Juraldine Battle-Hodge

and I hereby certify that I have mailed by United States Postal Service the document to the following:

Juraldine Battle-Hodge, Esq
207 Montgomery Street, Ste. 215
Montgomery, AL 36104

/s/Wallace D. Mills
Wallace D. Mills
Assistant City Attorney
103 North Perry Street
Montgomery, AL 36104