IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CARL LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  2:06cv237-CSC |
| ) | (WO) |
| CITY OF MONTGOMERY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

The plaintiff, Carl Lewis, a former employee of the City of Montgomery, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), alleging that he was discriminated against on the basis of his race (African-American) when he was terminated from his employment.  This court has jurisdiction of Thomas' discrimination claims pursuant to the jurisdictional grant in 42 U.S.C. § 2000e-5.  The parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. L.R. 73.1.

Now pending before the court is the defendant's motion for summary judgment.  The court has carefully reviewed the motion for summary judgment, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials and concludes that the motion is due to be granted.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Jeffery v Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir. 1995); *Edwards v. Wallace Cmty Coll.,* 49 F.3d 1517, 1521 (11th Cir. 1995).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element of his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir. 1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986); *See also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir.

1989).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir. 1990). *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).

### III. FACTS

In August 1992, Lewis began working as a motorcycle mechanic in the City of Montgomery's Garage Department. (Doc. No. 1, p. 3.) During Lewis' employment, both Terry Gaddis, the Director of Fleet Management, and Royce Albright, the plaintiff's supervisor, repeatedly gave verbal warnings to Lewis about his tardiness and his failure to contact a supervisor prior to clocking into work after the beginning of his shift.[1] (*Id.*) The City Shops Department's Operating Instruction Number 8 provides in pertinent part:

> . . . When employees are going to be late reporting to duty, they are to call the Control Center/Foreman PRIOR to their shift start time. Failure to do so WILL result in a Written Reprimand. A person clocking in after his scheduled shift start time is considered "late", even if it is just one minute. . . .

---

[1] The defendant asserts that, on at least six occasions, Lewis arrived late to work without calling his supervisor in violation of Operating Instruction Number 8. (Doc. No. 17-2, p. 1.) Lewis, however, alleges that he always called the Control Department when he was late to work. (Doc. No. 20-8, Lewis' Affid.) Lewis concedes that, on at least one occasion after December 25, 2005, he and Royce Alright had a conference regarding his absence from work. (Doc. No. 32-2, p. 2.)

3

> . . . Personnel receiving three (3) reprimands in one or a combination of any of the above categories in a one hundred eighty (180) day period for any violations in paragraph eight (8) CAN expect to receive a three (3) day suspension without pay. A person receiving four (4) reprimands in a one hundred eighty (180) days period WILL be suspended without pay for a period of five (5) days. If an individual receives five (5) reprimands in a one hundred eighty (180) day period, a recommendation WILL be made for dismissal from City employment. . . .

(Doc. No. 17-2, Attach. Gaddis' Affid.)

On January 31, 2005, Lewis' supervisor, Royce Albright, gave Lewis six written reprimands for failing to call his supervisor prior to arriving late to work. (Doc. No. 1, p. 3.) One week later, Lewis received a notice of a departmental disciplinary hearing, specifically charging as follows:

> Numerous verbal counseling sessions by your division superintendent, a verbal reminder for being late from the department's timekeeper and six (6) documented violations of Departmental Operating Instruction Number 8 to wit: failure to call your supervisor or the operations center before your shift start time advising that you would be late for work on the following dates – October 5, 2004, October 15, 2004, January 7, 2005, January 14, 2005, January 31, 2005 and February 1, 2005.
>
> As stated above, you received several verbal counselings, one from the Assistant Director concerning you taking excessive time off with no accumulated leave, as well as your superintendent's verbal counselings for being tardy and not calling to let him or anyone else know you would be late to work prior to receiving each of these letters of reprimand. You also acknowledged your understanding of Departmental Operating Instruction (OI) Number 6 and the disciplinary consequences if you did not comply. I have advised all employees throughout my tenure as Director to refresh their memory of all department [operating instructions] every six months.

> You have made no effort to improve your tardiness and taking time off without leave. In fact, you have continued to come to work late, take time off without leave and failed to call in prior to your shift start time to say you would be late so often that the supervisory and administrative staff cannot process the disciplinary paperwork and administer the letters of reprimand fast enough to keep up.

(Doc. No. 17-2, Def's Ex. A, Attach to Gaddis' Affid.) Lewis did not attend the scheduled hearing. After the proceeding, Lewis was terminated from his position as a motorcycle mechanic.

Lewis subsequently appealed the Personnel Board's decision to Barbara Montoya ("Montoya"), Personnel Director for the Montgomery City-County Personnel Board. (Doc. No. 17-3, Def's Ex. B, Montoya's Affid., p. 1.) Montoya determined that management had not given Lewis sufficient warning that his termination was imminent, and she arranged for Lewis to meet with his supervisor and the mayor's assistant concerning his request to be reinstated. (*Id.* at 2.) Lewis did not go to the meeting. (*Id.*) Later, Lewis contacted Montoya, stating that he had made a mistake, and requested further assistance. (*Id.*) Once again, Montoya intervened on Lewis' behalf and arranged for Lewis to report to work and meet with his supervisors. (*Id.*) Lewis, however, did not report to work and failed to attend a subsequent hearing before the Personnel Board. (*Id.*)

At some point after his termination, Lewis filed a charge of discrimination against the City of Montgomery with the EEOC. (Doc. No. 24-1, p. 3.) The EEOC subsequently dismissed his case. (*Id.*) Lewis filed this federal lawsuit on March 14, 2006, and an amended complaint on April 27, 2006. (Doc. Nos. 1 & 10.)

## V. DISCUSSION

Lewis contends that he was terminated from his position as a motorcycle mechanic because of his race. Specifically, he alleges that, although he was fired for receiving several reprimands, a white employee was merely suspended for similar conduct. He also alleges that he was disciplined for taking time off work without pay but that three other white employees were not disciplined for leaving work without compensation.

Title VII prohibits discrimination on the basis of race, color, religion, sex, or national origin in a variety of employment practices.[2] *See Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995). In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against him. *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). This Circuit has consistently held that federal courts, in resolving Title VII claims, do not review the accuracy of an employer's decision to terminate a plaintiff's employment. *See, e.g., Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1321 n.16 (11th Cir. 1998) (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("Title VII is not a shield against harsh treatment at the workplace.")).

To defeat the defendant's motion for summary judgment, Lewis must first establish a prima facie case of discrimination by one of three generally accepted methods: (1)

---

[2] Title 42 U.S.C.A. § 2000e-2(a)(1) provides: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."

presenting direct evidence of discriminatory intent; (2) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) presenting statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).[3]  Because Lewis has not presented any direct or statistical evidence supporting his claim of intentional discrimination, the court proceeds to determine whether Lewis has demonstrated a prima facie case of intentional discrimination.

To the extent that Lewis alleges that he was treated differently from other employees, the court construes this claim as a disparate treatment claim. To establish a prima facie case of disparate treatment under Title VII, Lewis must show that there were employees, not within his protected class, who were similarly situated, but who were treated more favorably. *See Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997). The parties do not dispute that Lewis is African-American and

---

[3] Direct evidence of employment discrimination consists of statements by a person with control over the employment decision "sufficient to prove discrimination without inference or presumption." *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993) (citing *Carter v. City of Miami,* 870 F.2d 578, 581-82 (11th Cir. 1989). The Eleventh Circuit has severely limited the type of language constituting direct evidence of discrimination. *See*, *e.g.*, *Evans v. McClain of Ga., Inc*., 131 F.3d 957, 962 (11th Cir. 1997); *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393-94 n.7 (11th Cir. 1997); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990). A plaintiff presents direct evidence of discrimination where "actions or statements of an employer reflect a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641-42 (11th Cir. 1998); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir.2004) (quotation marks omitted); *see also Haynes v. W.C. Caye & Co., Inc.*, 52 F.3d 928, 931 (11th Cir.1995) ("[A] statement that members of a racial minority in general or women in general are simply not competent enough to do a particular job would seem to be a classic example of direct evidence."). Lewis does not argue that there exists direct evidence of intentional discrimination in this case, and he has not presented any statistical evidence supporting his claims of intentional discrimination.

that he was terminated from his position as a mechanic. They do disagree, however, as to whether similarly situated persons outside of the plaintiff's protected class received more favorable treatment. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to determine whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999) (citing *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998) *modified by*, 151 F.3d 1321 (11th Cir. 1998)).[4] The plaintiff must identify similarly situated employees, outside the protected class, who engaged in nearly identical misconduct, but received better or more favorable disciplinary treatment. *See Maniccia,* 171 F.3d at 1368; *Jones,* 137 F.3d at 1311; *Jones v. Gerwens,* 874 F.2d 1534, 1540 (11th Cir. 1989); *Nix*, 738 F.2d at 1186.

> In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to determine whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. "The most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishments imposed." In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."

*Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (internal citations omitted) *quoting Jones*, 137 F.3d at 1311 (internal citations omitted). *See also, Maniccia*, *supra*; *Jones*, 874 F.2d at 1540; *Nix*, 738 F.2d at 1186. The question of whether the plaintiff

---

[4] The part of this opinion dealing with the establishment of a prima facie case by circumstantial evidence was not superceded by *Jones v. Bessemer Carraway Med. Ctr.,* 151 F.3d 1321 (11th Cir. 1998). Only the part of the Court's opinion regarding direct evidence was superceded.

is similarly situated with non-minority employees is crucial. *See Marshall v. Western Grain Co., Inc.*, 838 F.2d 1165, 1168 (11th Cir. 1988) (citing *Kendall v. Block*, 821 F.2d 1142 (5th Cir. 1987)).[5]

After careful review, the court concludes that Lewis' evidentiary submissions do not create a genuine issue of material fact about whether he was similarly situated to other white employees because these employees either did not engage in similar acts of misconduct or they did not have a similar history of misconduct. Lewis alleges that he is similarly situated to four white employees – Johnny Ray Smith ("Smith"), John Hooper ("Hooper"), James Barnes ("Barnes"), and Paul Ammons ("Ammons").[6]

First, Lewis argues that he was terminated while Smith was merely suspended for failing to come to work on time. However, the evidentiary materials clearly indicate that Smith received three reprimands and Lewis received six reprimands.[7] Given the nature of the progressive discipline policy, this difference in the number of reprimands is significant. Thus, Lewis has not shown that he is similarly situated to Smith. *See Maniccia*, 171 F.3d at 1369 (female plaintiff not similarly situated to male comparators where female plaintiff had

---

[5] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[6] In his amended complaint, Lewis asserts that he was situated similarly to John Hopper, Paul Commons, and Ken Barnes. (Doc. No. 10, p. 4.) However, the defendant asserts, and Lewis does not dispute, that the City of Montgomery's garage has no employees by those names. (Doc. No. 24-1, p. 1.)

[7] In his response, Lewis alleges that Smith received four or five letters of reprimand on separate occasions. (Doc. No. 20, Pl's Ex. 5; Doc. No. 21, p. 7.) However, Lewis' allegation is not supported by admissible evidence. *See* FED.R.CIV.P. 56(e).

committed at least four policy violations while male comparators had each only committed one policy violation); *Jones*, 137 F.3d at 1312-13 (female plaintiff who committed multiple acts of misconduct in a single day not similarly situated to other employees who had each only committed one act of misconduct).

Next, Lewis asserts that he was reprimanded for taking time off work without pay, but that Hooper, Barnes, and Ammons were permitted to do so without being disciplined for their actions. (Doc. No. 10, p. 4.) The defendants maintain that Hooper is not a proper comparator because he submitted doctor's notes verifying that he was under a physician's care and submitted a written claim under the Family and Medical Leave Act ("FMLA") prior to taking time off without pay. (Doc. No. 24-1, p. 2.) Although the evidentiary materials clearly indicate that Hooper requested leave on several occasions prior to missing work and used his accrued leave time or leave under the FMLA, Hooper's personnel file also indicates that he received one written reprimand for failing to request leave before a shift in January 1991 and another reprimand for failing to produce a physician's certificate to substantiate an illness in December 1991. (Doc. No. 24-3, Def's Ex. A-1, pp. 18 & 20.) Given that Lewis received six reprimands for failing to call or request permission to use leave without pay prior to his shift and did not provide medical documentation or submit a claim under the FMLA prior to taking leave, Hooper's approved FMLA absences and two reprimands for tardiness are insufficient to establish that Hooper and Lewis were similarly situated. *See Maniccia*, *supra*.

This court likewise concludes that Barnes and Lewis are not similarly situated. The

defendant asserts that Barnes is not a proper comparator because he requested approval from city officials prior to taking time off from work and that he used his accrued sick leave and donated leave from fellow employees. (Doc. No. 24-4, Def's Ex. A-2.) The evidentiary materials indicate that Barnes received several reprimands for failing to call his supervisor prior to being late to work on August 20, 1992, May 10, 1993, September 7, 1993, November 23, 1993, July 12, 1995, May 7, 1998, October 24, 1998, March 5, 2001. (*Id*., pp. 20, 22, 28, 30, 32, 34, 36, 41.) Thus, Barnes committed no more than three violations within a 180-day period. Lewis' six offenses over the course of a 180-day period are sufficient to establish that Lewis was not similarly situated to Barnes. *See Maniccia*, 171 F.3d at 1369. More importantly, the evidentiary materials indicate that Barnes used his accrued leave time when he missed work and never used leave without pay. Thus, Barnes is not a proper comparator in this case.

The defendant also asserts that Ammons is not an appropriate comparator to Lewis. The evidentiary materials indicate that Ammons was reprimanded for failing to report that he would be late on November 13, 1986, January 19, 1988, September 26, 1988, December 20, 1988, April 17, 1990, and September 19, 1996. (Doc. No. 24-5, Def's Ex. A-3, pp. 14, 24, 25, 26, & 28.) Thus, Ammons received no more than two reprimands for tardiness within a 180-day period. Lewis' six reprimands for untimeliness within a 180-day period are sufficient to establish that Lewis was not similarly situated to Ammons. *See Maniccia, supra.* In addition, the undisputed evidence indicates that Ammons received prior approval for his other absences from work. This court therefore concludes that Ammons and Lewis

are not similarly situated.

> Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal . . . The law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality. What the law does require is that an employer not discriminate against an employee on the basis of the employee's protected class characteristics.

*E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1319 (10th Cir. 1992). After careful review, the court concludes that Lewis has failed to demonstrate a prima facie case of discrimination under the disparate discipline theory because he has not demonstrated that he is similarly situated to any individuals outside his protected class who were treated more favorably than him. The court could leave it at that, but it is better to complete the analysis, so the court turns to the remaining aspects of the analysis.

Under the second prong of the *McDonnell Douglas* test, the burden shifts to the defendant to present a legitimate, non-discriminatory reason for Thomas' termination. *McDonnell Douglas*, 411 U.S. at 802. "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). "'The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S.

at 254-55). This intermediate burden is "exceedingly light." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).

The defendant has produced evidence showing that Lewis was terminated because he "received five or more reprimands for failing to notify his supervisors that he would be late on five or more occasions during a one hundred eighty day period." (Doc. No. 17, p. 7.) Tardiness or absences are legitimate, nondiscriminatory reasons for terminating an employee. *See Lloyd v. Hi-Ridge Transport*, 396 F.Supp.2d 1290, 1296 (M.D. Ala. 2005).[8] Therefore, the court concludes that the defendant has offered a legitimate, non-discriminatory reason for Lewis' termination.

Having determined that the defendant presented evidence of a legitimate, non-discriminatory reason for Lewis' termination, the court now turns to the third prong of the *McDonnell Douglas* test. *McDonnell Douglas*, 411 U.S. at 802. Lewis must establish that the defendant's justification for his termination was a pretext for discrimination based on his race. Construing the evidence in the light most favorable to the plaintiff, the court concludes that Lewis has failed to present substantive evidence that the defendant's reason for terminating him was a pretext for racial discrimination.

In evaluating a plaintiff's evidence of pretext, the court is not required to agree with the employer's proffered reasons for discharge. This Circuit has consistently held that

---

[8] *Cf. Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648 (11th Cir. 1993) (determining that evidence that employees occasionally made operating errors, were late or absent from work, or showed character flaws satisfied employer's burden of production of legitimate, nondiscriminatory reasons for not giving certain employees pay increases).

federal courts, in resolving these types of claims, do not review the accuracy of an employer's decision to terminate a plaintiff's employment. *See e.g., Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1321 n.16 (11th Cir. 1998), *quoting Nix,* 738 F.2d at 1187 ("Title VII is not a shield against harsh treatment at the workplace. . . The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."). Instead, the crucial question is whether the employer was motivated by an improper discriminatory bias. *See, e.g., Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998); *Combs*, 106 F.3d at 1538.

In his response, Lewis initially argues that the defendant's articulated reasons for terminating him should not be believed because the defendant failed to follow its progressive disciplinary policy. Specifically, he argues that management should have provided him a written warning shortly after each incident occurred, instead of waiting and giving him six written reprimands on the same day. The court, however, concludes that Lewis' argument fails to demonstrate that the defendant's reasons are pretextual, especially in light of Lewis' repeated failure to meet with his supervisors after the Personnel Director for the City of Montgomery determined that management had failed to follow the City's progressive policy. There is no dispute that Lewis failed to attend a meeting with his supervisor and the Mayor's Assistant concerning the problem. Moreover, even after management asked Lewis to return to work and gave him another chance to meet with his supervisors, Lewis did not go to this second meeting. Consequently, Lewis' argument fails to establish pretext.

Although Lewis argues that he became fearful and "g[ave] up fighting for his position" because someone slashed the tires of a motorcycle vehicle he had repaired and his supervisor "did not do anything,"[9] there is no evidence indicating that his supervisors were involved in or condoned this behavior. More importantly, there is no evidence indicating that this incident was in any way motivated by any improper discriminatory bias. Lewis' mere speculation that he was "subjected to harassment by what appeared to be management" is insufficient to demonstrate pretext.

Lewis fails to present or direct the court to any evidence establishing that the decision to terminate him was racially motivated. At best, Lewis presents nothing more than unsubstantiated allegations and conclusory statements in opposition to the defendant's motion for summary judgment with respect to the discriminatory discharge claim. "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). *See, e.g.*, *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value). *See also Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976) (conclusory statements, unsubstantiated by facts in the record, will normally be insufficient to defeat a motion for summary judgment).[10]

---

[9] (Doc. No. 21, p. 10.)

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

For these reasons, the court concludes that the defendant's motion for summary judgment should be granted. Accordingly, it is

ORDERED that the defendant's motion for summary judgment be and is hereby GRANTED. A separate final judgement will be entered.

Done this 13th day of August, 2007.

       /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE